UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM LEE BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 4:13-cv-0190-DML-TWP |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security, ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## Decision on Judicial Review

Plaintiff William Lee Berry applied in January 2011 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that he has been disabled since December 1, 2008. Acting for the Commissioner of the Social Security Administration following a hearing held June 19, 2012, administrative law judge Anne Shaughnessy issued a decision on August 23, 2012, finding that Mr. Berry was not disabled before his date last insured for DIB. The Appeals Council denied review of the ALJ's decision on October 9, 2013, rendering the ALJ's decision for the Commissioner final. Mr. Berry timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Berry contends that the ALJ erred in deciding at step two that he did not suffer from a medically determinable severe impairment before his date last insured. For the reasons addressed below, the court AFFIRMS the Commissioner's decision that Mr. Berry was not disabled.

The court recounts the standard for proving disability under the Social Security Act and the court's standard of review of the administrative decision. It will then address Mr. Berry's assertion of error.

## **Standard for Proving Disability**

A claimant is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") has implemented this statutory standard by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant suffers from a medically determinable physical or mental impairment or combination of impairments that is severe. If he does not, then he is not disabled. The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for

the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's severe impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a

3

scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ determined that Mr. Berry was not disabled at step two.

Mr. Berry was born in 1950 and was 57 years old at the alleged onset of his disability in December 2008. His date last insured for DIB benefits was March 31, 2010, when Mr. Berry was 59 years old. R. 143. Mr. Berry's work experience is focused in the construction industry, including nearly 26 years during which he had his own construction business, building boathouses, decks, and garages on two lakes in Brown County, Indiana.

At step one, the ALJ found Mr. Berry had not engaged in substantial gainful activity since his alleged onset date.

At step two, the ALJ determined there were no medical signs or laboratory findings to substantiate that Mr. Berry had a medically determinable impairment before the expiration of his date last insured. Accordingly, the ALJ found at step

4

two that Mr. Berry was not disabled and did not reach steps three, four, or five of the sequential analysis.

## II. The ALJ's step two decision is supported by substantial evidence.

### A. In a Title II case, the claimant must be disabled before his date last insured.

Title II benefits are for individuals who have achieved insured status through employment and withheld premiums. 42 U.S.C. § 423(a)(1)(A). Formulas are used to determine the length of time that an individual, based on his age and work history, remains insured for Title II benefits. *See* 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.130. In Mr. Berry's case, his date last insured was March 31, 2010. His eligibility for Title II benefits depends upon his having become disabled before March 31, 2010. *Shideler v. Astrue,* 688 F.3d 306, 311 (7th Cir. 2010) (whatever the condition a claimant may be at some later point in time, he "must establish that he was disabled before the expiration of his insured status . . . to be eligible for disability insurance benefits"); *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 348 (7th Cir. 1997) (to be entitled to DIB, "an individual must establish that the disability arose while he or she was insured for benefits").

### B. The medical evidence does not reflect testing, diagnoses, or treatment related to Mr. Berry's alleged disability before his date last insured.

Mr. Berry relied on his treatment by Dr. Marc Willage as evidence of his disability. He first saw Dr. Willage in June 2009 (before his date last insured) and did not return for treatment until March 2011 (after his insured status expired). At the June 2009 appointment, Mr. Berry reported he could not hear out of his left ear

and had a history of wax accumulating in that ear. The doctor's examination indicated seborrhea of both ears with hard appearing cerumen occluding both ears.[1] He prescribed ointment and droplets as treatment. R. 159. Dr. Willage also recorded under the title "Past Medical History" that Mr. Berry had suffered a head injury when struck by a garage door spring. *Id.*

About two years later, in March 2011, Mr. Berry returned to Dr. Willage and complained of a headache for which he could not control the pain. R. 156. He reported that in his mid-30s he had been struck in the head by a garage door spring and had had gradually progressing, worsening, and variable headaches over the left frontal area since then. He also reported a history of throbbing headaches on the right side at times over the last 10 years. *Id.* Dr. Willage recommended screening exams and studies and possibly an EEG and CT scan. R. 157. Mr. Berry underwent a CT scan in May 2011. R. 175. It was "essentially normal," though Mr. Berry continued to report headaches, which were especially worse after significant physical activity. R. 169. Mr. Berry returned to Dr. Willage in November 2011 and in April 2012, and reported at those visits that he had recurrent headaches, vertigo, and problems with balance. R. 162, 166.

Dr. Willage wrote two opinions concerning Mr. Berry's condition. He prepared a letter dated November 29, 2011, "to whom it may concern" which states his belief in Mr. Berry's "assertion of incapacitating headaches when giving forth significant physical exertion" and his opinion that Mr. Berry is not physically

---

[1] Seboreum describes an inflammation of the skin. Cerumen is earwax.

capable of performing jobs for which he has experience and training. R. 161. Dr. Willage also completed a form titled "Headaches Residual Functional Capacity Questionnaire," dated April 2012, in which Dr. Willage stated he had been treating Mr. Berry for headaches since March 2011. As to positive test results or objective signs of the headaches, Dr. Willage noted that a CT scan was normal and that he recommended an EEG, appropriate lab work, and an evaluation by a neurologist. R. 180.

### C. Step two requires a medically determinable impairment.

Social Security Act regulations require that a claimant have a physical or mental impairment that is "medically determinable." 20 C.F.R. § 404.1520(a)(4)(ii). An individual's "symptoms" are not enough to establish a medically determinable impairment, no matter how credible they seem. SSR 96-4p. Rather, there must be objective medical abnormalities shown by "medical signs or laboratory findings." *Id*. The Social Security Administration has explained:

> No symptom or combination of symptoms by itself can constitute a medically determinable impairment. In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 C.F.R. 404.1520.

*Id*.

### D. The ALJ reasonably determined that there was insufficient evidence of a medically determinable impairment.

The ALJ's determination that there was insufficient evidence of a medically determinable impairment is supported by substantial evidence, including the

7

medical opinion of state agency physicians. Mr. Berry complains that the ALJ should have given more weight to Dr. Willage's opinion, however. He contends that the headache questionnaire completed by Dr. Willage in April 2012 shows that he suffered from a medically determinable impairment before his March 2010 last date insured. He states that "It is clear that in Dr. Willage's opinion there are medical signs that substantiate Claimant's condition such as a fractured skull that dates back to 1984." (Dkt. 17 at p. 7). The record provides no substantiation for Mr. Berry's version of the evidence. Nothing suggests a fractured skull. Mr. Berry's May 2011 CT scan was "essentially normal," and even as of April 2012, Dr. Willage indicated that other tests and evaluations needed to be conducted. (R. 180). Moreover, Dr. Willage noted that he did not begin treating Mr. Berry for his headache symptoms until March 2011. There is simply nothing in Dr. Willage's April 2012 opinion or in his treatment records documenting medical signs or laboratory findings connected to headaches before the March 31, 2010 date last insured. As addressed above, the only medical signs identified by Dr. Willage before that date related to an inflammatory skin condition and earwax, neither of which was ever tied to Mr. Berry's headaches.

 The ALJ's decision reflects her careful consideration of all the evidence. Her conclusion that Mr. Berry did not suffer from a medically determinable impairment before his date last insured is reasonable. The court must therefore affirm the Commissioner's decision.

## Conclusion

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Mr. Berry was not disabled.

So ORDERED.


Dated: March 24, 2015

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana




Distribution:

All ECF-registered counsel of record by email through the court's ECF system